IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**RISIE HOWARD, as Personal Representative**
**Of the Estate of Mrs. George Howard, Jr.**                                **PLAINTIFF**

**V.**                                 **4:22CV00995 JM**

**HORMEL FOODS CORPORATION**
**Jim Snee, Chairman of the Board**                                        **DEFENDANT**

**ORDER**

Pending are cross motions for summary. The motions have been fully briefed and are ripe for consideration. For the following reasons, Plaintiff's motion is denied, and Hormel's motion is granted.

I. Facts

Decedent Vivian Howard was 93 years old when she died on October 20, 2019. Mrs. Howard had a history of Type 2 diabetes and muscle weakness. She had previously been diagnosed with high blood pressure and diastolic heart failure. She had limited mobility and needed help with everyday activities such as bathing and dressing. Mrs. Howard's daughter, Risie Howard, along with in-home healthcare providers, were Mrs. Howard's primary caregivers from approximately 2017 until her death.

On July 18, 2019, Mrs. Howard was admitted to Baptist Health Medical Center. She was diagnosed with aspirational pneumonia caused by aspirating food into her lung. During her hospital stay, Mrs. Howard was given Hormel Thick & Easy Puree meals to help her swallow. She was discharged on July 27, 2019. A speech therapist recommended that Mrs. Howard continue with the Hormel meals at home. However, Mrs. Howard resumed her normal diet when she returned home.

On September 18, 2019, Mrs. Howard was once again admitted to Baptist Hospital. She was diagnosed with dysphagia,[1] severe malnutrition, respiratory distress, and sacral decubitus ulcers. After six days in the hospital, Mrs. Howard was discharged. Because of her dysphagia diagnosis, a speech therapist at the hospital prescribed the Hormel Thick & Easy Puree meals and Hormel Thick & Easy Instant Food & Beverage Thickening Powder to be added to any liquid Mrs. Howard drank once she returned home.

From September 24, 2019, to October 15, 2019, Mrs. Howard ate six Hormel meals per day, two for breakfast, two for lunch, and two for dinner. The specific meals Mrs. Howard ate were (1) Hormel Thick & Easy® Puree Roasted Chicken meal; (2) Hormel Thick & Easy® Puree Roasted Turkey meal; (3) Hormel Thick & Easy® Puree Scrambled Eggs meal; and (4) Hormel Thick & Easy® Puree Homestyle Beef (the "Hormel meals"). Mrs. Howard also added Hormel Thick & Easy® Instant Food & Beverage Thickening powder to her water four times per day and occasionally drank Hormel Thick & Easy® Thickened Dairy Beverage (collectively the "Hormel products").[2] Mrs. Howard ate only the Hormel meals after she was discharged from the hospital based upon the instructions from the speech therapist. Neither Mrs. Howard nor her caregivers investigated any other brand of pre-made food.

On October 15, 2019, Mrs. Howard was taken by ambulance to Jefferson Regional Medical Center ("JMRC").  According to the reports of the emergency medical services team, Mrs. Howard suffered cardiac arrest and was resuscitated prior to transport to the hospital. (ECF No. 77-5). Once at the hospital, Mrs. Howard was admitted into the intensive care unit. Records show that Mrs. Howard was found unresponsive with no pulse by staff. After resuscitation, Mrs.

---

[1] Dysphagia is the medical term for swallowing difficulties.
[2] It is undisputed, however, that she switched to a pre-thickened water called Thick-it Aqua Care H2O Water at some point.

Howard was intubated, and a central venous catheter was inserted. (ECF No. 77-11). Among other things, Mrs. Howard was diagnosed with severe dehydration and her sodium levels were measured at 182 (ECF No. 91-10; 91-12).

Mrs. Howard passed away on October 20, 2019, at JMRC. Hospital records show that, on the day of her death, Mrs. Howard was diagnosed with acute respiratory failure, acute pulmonary edema, acute encephalopathy, non-ST elevated myocardial infarction, acute renal failure, diabetes mellitus, hyperglycemia, hypernatremia, elevated liver enzymes, shock, malnutrition, elevated INR, decubitus ulcer of coccyx, and cardiac arrest. (ECF NO. 77-10).

Plaintiff hired Dr. Frank Peretti to perform an autopsy of Mrs. Howard. In the autopsy report, Dr. Peretti concluded that Mrs. Howard died of bronchopneumonia. (ECF No. 91-9). Although Peretti found that Mrs. Howard had hypertensive atherosclerotic cardiovascular disease, he found no evidence that she had ever suffered a heart attack.

Plaintiff believes that the Hormel products Mrs. Howard ingested caused her death. She filed suit in the Circuit Court of Jefferson County, Arkansas, and Hormel removed the case to this Court based on diversity jurisdiction. Plaintiff makes the following claims against Hormel: 1) strict products liability for manufacturing defect; 2) strict products liability for failure to warn; 3) breach of the implied warranties of merchantability and fitness for a particular use; 4) negligence; and 5) wrongful death. Plaintiff seeks five million dollars in compensatory damages and ten million dollars in punitive damages. Both parties filed motions for summary judgment of the claims.

II. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874

(8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

III. <u>Analysis</u>

To recover in strict liability for the manufacture of a product under Arkansas law, Plaintiff must show that (1) Mrs. Howard sustained damages; (2) that Hormel was engaged in the business of manufacturing, ... or distributing the product; (3) that the Hormel products were supplied by Hormel in a defective condition which rendered them unreasonably dangerous; and (4) that the defective condition was a proximate cause of Mrs. Howard's damages. *Kendrick, v. Wright Med. Tech., Inc.*, 2021 WL 3516663, at *4 (E.D. Ark. Aug. 10, 2021) (quoting *West v. Searle & Co.*, 806 S.W.2d 608, 610 (Ark. 1991)).

The Arkansas Supreme Court has held that a "plaintiff must establish 'essentially the same' elements to prevail on a strict liability claim and a breach-of-warranty claim." *Id.* at *7 (citing *Higgins v. General Motors*, 699 S.W.2d 741, 743 (Ark. 1985)). Breach of warranty and strict products liability claims are "essentially the same" insofar as both require a product defect attributable to the defendant. *Higgins*, 699 S.W.2d at 742. "A defendant may demonstrate that it is entitled to summary judgment because plaintiff failed to present evidence of a defect, and the presence of a defect is a common element essential to both claims." *Singleton v. Arkansas Hous. Authorities Prop. & Cas. Self-Insured Fund, Inc.*, 2018 WL 1588022, at *5 (E.D. Ark. Mar. 31, 2018), aff'd, 934 F.3d 830 (8th Cir. 2019) (citing *Madden v. Mercedes-Benz USA, Inc*, 481 S.W.3d 455, 460 (Ark. App. 2016)).

"To be actionable, a plaintiff must present evidence of the type of defect which renders the product not merely inadequate, but one which poses an actual danger to persons or property. A 'defective condition' is one that renders a product unsafe for reasonably foreseeable use and consumption. A product is 'unreasonably dangerous' if it is dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable user, assuming the ordinary

knowledge of the community or similar users as to its characteristics, propensities, risks, dangers, and proper and improper uses, as well as any special knowledge, training, or experience possessed by the user." *Singleton*, 2018 WL 1588022, at *3 (citing Ark. Code Ann. § 16-116-102(2) & (7)).

"[I]n the absence of direct proof, the plaintiff must negate other possible causes of the injury not attributable to the defendant, thereby raising a reasonable inference that the injury was caused by a defective product." *Id.* (citing *Southern Co. v. Graham Drive-In*, 607 S.W.2d 677, 679 (Ark. 1980)). Arkansas law requires that plaintiff present "substantial evidence" that "negates other possible causes of failure of the product not attributable to the defendant." *Id.* at *4 (*Madden*, 481 S.W.3d at 459). "Substantial evidence is that which is of sufficient force and character that it will compel a conclusion one way or another. It must force or induce the mind to pass beyond suspicion and conjecture." *Id.*

    A. <u>Manufacturing Defect and Breach of Warranty</u>

Plaintiff alleges that the Hormel products have a manufacturing defect. "Manufacturing defects involve a configuration of a product that deviates from the intended design. . .." *Simpson v. Wright Med. Grp., Inc.*, 2018 WL 1570795, at *9 (E.D. Ark. Mar. 30, 2018). Hormel contends that Plaintiff has no evidence or expert testimony to prove that the Hormel products deviated from the norm or deviated from specifications enough to deem them unreasonably dangerous. On the other hand, Hormel has presented evidence that its products have never been out of compliance with FDA or USDA standards and have never been the subject of an FDA or USDA enforcement action or penalty. (Rao Dec., ECF No. 91-5).

The Court finds that Plaintiff has failed to present any direct evidence of a manufacturing defect. Here Plaintiff relies on a *res ipsa loquitor* theory. The *res ipsa* argument only works if

Plaintiff offers or points to record evidence that negates other possible causes of Mrs. Howard's death not attributable to Hormel's products. *Kendrick,* 2021 WL 3516663, at *5.

Plaintiff relies on the testimony of her expert Dr. Martha Flowers. When Dr. Flowers was asked whether she could rule out other causes of Mrs. Howard's death e.g., bronchopneumonia, her age, or pre-existing medical problems, she testified that she could not.

> A. I didn't do a differential diagnosis but I-I'm not sure what you're saying because I – there was no need for me to do a differential diagnosis. Now, if you wanted me to consider other causes, caused her cardiac arrest, yes, I thought about it. If that's what you're asking me.
>
> (Flowers Depo., ECF No. 136-2 at p. 59:10-25 – 60:1-5).
>
> Q. Just trying to be clear. So, you did not do a differential diagnosis in coming to your opinions in this case?
> A. Oh, yes.
> Q. So, you –
> A. You mean, did I – I've listed other possibilities- reasons for her cardiac arrest.
> Q. And you ruled all those other reasons out?
> A. No, I could not rule those out.
>
> (Flowers Dep., ECF No. 136-1 at p. 5).

The Court finds that Plaintiff has failed to present any direct evidence that the Hormel products which Mrs. Howard ate were defective and failed to present substantial evidence to rule out the other possible causes of Mrs. Howard's death. Plaintiff has failed to meet proof with proof as required to withstand a motion for summary judgment. Therefore, the Court must enter summary judgment in favor of Hormel on Plaintiff's products liability claim for manufacturing defect and breach of implied warranties of merchantability and fitness for a particular use.[3]

---

[3] Hormel spends a large portion of its briefing arguing that Plaintiff's claims must fail because she failed to prove proximate cause. However, the Court need not rule on the issue of proximate cause because Plaintiff has failed to prove that the Hormel products were defective, that the nutrition label was inadequate to warn consumers of sodium content, or that Hormel was negligent.

B. <u>Strict Liability Failure to Warn</u>

Under Arkansas law, a manufacturer of a product has a duty to give a reasonable and adequate warning of dangers inherent or reasonably foreseeable in its use. As a general rule, there is a duty to warn the ultimate user of a product of the risk of the product. This duty exists under either a negligence theory or a strict liability theory. *West*, 806 S.W.2d at 613. It is the plaintiff's burden to prove that "the warning or instructions provided were inadequate. Once a [p]laintiff proves the lack of an adequate warning or instruction, a presumption arises that the user would have read and heeded adequate warnings or instructions. However, 'this presumption may be rebutted by evidence which persuades the trier of fact that an adequate warning or instruction would have been futile under the circumstances.'" *Edwards v. Skylift, Inc.*, 2021 WL 3575472, at *5 (E.D. Ark. Aug. 12, 2021), aff'd, 39 F.4th 1025 (8th Cir. 2022) (citing *Bushong v. The Garman Co.*, 843 S.W.2d 807, 812 (Ark. 1992)).

Plaintiff alleges that Hormel is strictly liable for failing to provide proper and adequate warnings about the sodium content in their products and the risks of consuming the products,

> including among other things, the risks of hypernatremia, which can lead to hypertension, chronic kidney disease, congestive heart failure, seizures, coma and death; and the risks of dehydration; and other side effects and physical injury.

(Am. Comp., ECF No. 37 at p. 9).

Hormel argues that Plaintiff has failed to provide any evidence showing that the nutrition labeling on their products is insufficient. Further Hormel argues that Plaintiff has not, and cannot, prove her claim for several other reasons, including that Plaintiff has no proof that the products contained an excessive amount of sodium and that she admitted she never read the nutrition labels. The Court agrees.

It is undisputed that the Hormel products have nutrition labels that identify the amount of sodium in the products and the recommended daily value. Plaintiff has provided no evidence, other than her own testimony, to prove that the nutrition labels are inadequate to warn a consumer of the sodium content or that the sodium content in the Hormel products is excessive. Plaintiff argues that the Hormel products would be considered high in sodium under the Nutrition Labeling and Education Act ("NLEA"), but also admits that the Hormel products are not subject to the NLEA.[4] Further, Plaintiff has not provided evidence that the Hormel products would be considered high in sodium under the NLEA, only that they would not be considered low sodium products. (ECF NO. 112-4).

Moreover, Plaintiff testified that she did not read the labeling on the Hormel products' packaging except for the directions.

> Q Did you read any of the labeling on the Hormel Foods prior to giving them to --
> A. Just the directions.
> Q -- Vivian? So you didn't read the nutrition labeling on any of the Hormel Foods?
> A Just the directions.
>
> (Pl. Depo. 91-1, 68:23-69:3).
>
> Q You testified earlier that you didn't read the label before serving the food?
> A I said I read the directions.
> Q Correct. And you testified that you didn't read anything else other than the directions?
> A That's exactly right.
>
> *Id.* at 1887:5-10.

---

[4] The Hormel meals are under the jurisdiction of the USDA. Hormel Thick & Easy® Instant Food & Beverage Thickening powder and Hormel Thick & Easy® Thickened Dairy Beverage are under the jurisdiction of the FDA. The Food Safety and Inspection Service ("FSIS") is the public-health agency within the USDA responsible for ensuring the safety of the commercial meat supply within the United States, including labeling. "Neither the USDA or the FDA promulgate regulations or requirements for the quantity of sodium permitted to be used in the Subject Products. For a main dish-type product, like the Thick & Easy® Purees, to brand itself 'healthy' it must contain less than 600mg of sodium per serving. All of the Subject Products contain less than 600mg of sodium per serving." (Rao Decl., ECF No. 91-5 at p. 3).

Through Plaintiff's testimony, Hormel rebuts the presumption that an additional warning would have been adequate. Any warning or instruction about the sodium would have been futile since Plaintiff would not have read it. *See Bushong,* 843 S.W.2d at 811 (summary judgment on a failure to warn claim affirmed because the plaintiff admitted he did not read a warning label on the chemical cleaning product that allegedly caused his injury). Summary judgment is granted to Hormel on Plaintiff's failure to warn claim.

C. Negligence

Plaintiff contends that Hormel owed a duty to Mrs. Howard to use reasonable care in the manufacture, distribution, and sale of its food products. She states that Hormel had a "duty to use ingredients and materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances and regulations, and that were clean, free from adulteration, and safe for human consumption. . .." (Am. Comp., ECF No. 37). Plaintiff must prove that Hormel owed a duty to Mrs. Howard, that Hormel breached that duty, and that the breach was the proximate cause of Mrs. Howard's injuries. *Yanmar Co. v. Slater*, 386 S.W.3d 439, 449 (2012).

Plaintiff has failed to provide any evidence from which a rational juror could find that Hormel breached its duty to use reasonable care in the manufacture of the Hormel products. Therefore, the Court grants summary judgment to Hormel on Plaintiff's negligence claim.

D. Wrongful Death

"In a wrongful-death case, the plaintiff must show that the defendant's negligence was the proximate cause of the decedent's death." *Scott v. Cent. Arkansas Nursing Centers, Inc.*, 278 S.W.3d 587, 595 (Ark. App. 2008). As stated, Plaintiff has failed to prove that Hormel was negligent. Therefore, Plaintiff cannot prove her claim of wrongful death.

IV. <u>Conclusion</u>

Plaintiff's motion for summary judgment (ECF No. 75) and motion for reconsideration (ECF NO. 139) are DENIED. Hormel's motion for summary judgment (ECF No. 89) is GRANTED. The Clerk is directed to close the case.

IT IS SO ORDERED this 2nd of February, 2024.

*[signature]*
James M. Moody Jr.
United States District Judge